UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| US GHOST ADVENTURES, LLC,           ) | |
|                                     ) | |
|         Plaintiff,                  ) | |
|                                     ) | |
| v.                                  ) | Civil No. 23-12116-LTS |
|                                     ) | |
| MISS LIZZIE'S COFFEE LLC and        ) | |
| JOSEPH PEREIRA,                     ) | |
|                                     ) | |
|         Defendants.                 ) | |
| _____ ) | |

ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION (DOC. NO. 11)

October 27, 2023

SOROKIN, J.

US Ghost Adventures, LLC ("Ghost Adventures"), operates a museum and a bed and breakfast at the Lizzie Borden House. Doc. No. 1 ¶ 5. On August 4, 2023, Joseph Pereira opened a Miss Lizzie's Coffee ("Miss Lizzie's") next door to the Lizzie Borden House. Id. ¶ 22. Ghost Adventures has filed suit advancing claims under federal and state law for trademark infringement, false designation of origin, unfair competition, and trademark dilution. See generally Doc. No. 1. Based on its federal trademark claim, Ghost Adventures now seeks to enjoin Miss Lizzie's and Pereira from utilizing the "LIZZIE BORDEN Trademark" or "Hatchet Logo" in their trade names, advertising materials, branding, and associated materials used in conjunction with the operation of their business, signage, Internet domain, and social media. Doc. No. 12 at 1-2. The Motion is fully briefed, and the Court heard argument on October 23, 2023. The hearing was non-evidentiary, as no party sought to offer live testimony.

The Court applies the familiar four-part test for injunctive relief.[1] Ghost Adventures has failed to demonstrate a likelihood of success for several reasons. In evaluating this crucial prong of the test, the key element in any infringement action is likelihood of confusion. Hilsinger Co. v. Kleen Concepts, LLC, No. 14-cv-14714-FDS, 2017 WL 3841468, at *5 (D. Mass. Sept. 1, 2017). Put another way, the alleged infringement must create "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 2 (1st Cir. 2008). Here, Ghost Adventures must demonstrate that Miss Lizzie's "used an imitation of its protected mark in commerce in a way that is 'likely to cause confusion, or to cause mistake, or to deceive.'" Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 48-49 (1st Cir. 2013) (quoting 15 U.S.C. § 1114(1)(a) (2006)). To make this determination, courts commonly look to the following factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981); see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004).

Several reasons persuade the Court that Ghost Adventures has not demonstrated a likelihood of success on the merits under these standards. First, Miss Lizzie's hatchet is not similar to Ghost Adventures' mark. The hatchet used by Miss Lizzie is not at all the hatchet

---

[1] "In ruling on a preliminary injunction motion, a district court must ask whether the moving party has established that (1) it has a substantial likelihood of success on the merits, (2) there exists, absent the injunction, a significant risk of irreparable harm, (3) the balance of hardships tilts in its favor, and (4) granting the injunction will not negatively affect the public interest." TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 544 (1st Cir. 1996).

trademarked by Ghost Adventures. The former has a handle, and the axe blade features no notch; the latter is the image of a blade without a handle, but with a notch halfway along the bottom of the metal forming the blade. <u>Compare</u> Doc. No. 1 at 6, <u>with</u> Doc. No. 1-2 at 2-4. Miss Lizzie's hatchet has blood coming from it; Ghost Adventures' does not. On its face, then, Miss Lizzie's hatchet is neither the trademarked hatchet nor a colorable imitation of it. 15 U.S.C. § 1114.

Second, Ghost Adventures has a service mark on "Lizzie Borden" for hotel and restaurant services. Doc. No. 1-1 at 3. Ghost Adventures makes no claim to a particular design, and there is no particular similarity between the marks here. Rather, Ghost Adventures claims that Miss Lizzie's cannot use a portion of its mark (the word "Lizzie"), at least in close physical proximity to Ghost Adventures' location, and especially in combination with a hatchet (albeit, in the Court's view, a decidedly different hatchet). Of course, as Ghost Adventures concedes, it does not own the Lizzie Borden story or history. Doc. No. 12 at 2; Doc. No. 20 at 6. Because Ghost Adventures has a composite trademark composed of two words, the Court "look[s] at 'the total effect of the designation, rather than a comparison of the individual features.'" <u>Aktiebolaget Electrolux v. Armatron Int'l, Inc.</u>, 999 F.2d 1, 4 (1st Cir. 1993) (quoting <u>Pignons</u>, 657 F.2d at 487). Here, Miss Lizzie's mark associates its business with the historical story of Lizzie Borden, not the mark "Lizzie Borden." The differing hatchets and differing colors further support that point. While Ghost Adventures has an "incontestable" trademark in "Lizzie Borden" and its hatchet, Miss Lizzie's is using neither the mark "Lizzie Borden" nor the Ghost Adventures hatchet. Ghost Adventures has not demonstrated that its mark bears the strength which might give it the "secondary meaning" reach that, for example, "Sam Adams Beer" might claim regarding the historical figure Sam Adams. <u>See</u> <u>Peoples Fed. Sav. Bank v. People's United Bank</u>, 672 F.3d 1, 6-7 (1st Cir. 2012) (finding a decreased likelihood of confusion where two banks'

marks contained the same dominant word but had differences between the marks and visual differences in the logos that "undoubtedly help customers distinguish between the two banks").

Third, the limited evidence of customer confusion that Ghost Adventures points to (contradicted to some extent by the evidence from Miss Lizzie's of the absence of confusion) arises from three sources:[2] both businesses operate in close physical proximity; both trade off the Lizzie Borden story; and many customers generally associate services related to a historical site, such as gift shops and cafes, with the nearby historical site itself.[3] Doc. No. 20 at 4. That last consideration does not empower Ghost Adventures to exclude others in the hospitality business from nearby locations, a point it readily and properly concedes. These reasons, in this case, are not suggestive of consumer confusion arising from infringement of Ghost Adventures' trademarks. Indeed, the same issues would arise if Miss Lizzie's called its cafe "Forty Whacks Coffee" and used a different image as its logo.

Fourth, while the goods sold by the parties both fall within the same class (i.e., hospitality services), Ghost Adventures registered the "Lizzie Borden" mark for hotel and restaurant services, Doc. No. 1-1 at 3, and Ghost Adventures and Miss Lizzie's are not direct competitors.

---

[2] The Court rejects Miss Lizzie's contention that the affidavits submitted by Ghost Adventures are inadmissible hearsay. These affidavits are offered for the state of mind of customers. See, e.g., Bos. Athletic Ass'n v. Sullivan, 867 F.2d 22, 31 (1st Cir. 1989).

[3] All the affidavits filed by Ghost Adventures describe customers (and a local government official) associating Miss Lizzie's business with Ghost Adventures. See generally Doc. No. 12. But none describe facts illuminating the reason for this confusion. For example, one tour guide reports "a lot of people ask if we opened a coffee shop" or say they "like []our coffee shop." Doc. No. 12-1 ¶ 8. The Court finds these comments arise from both the physical proximity of the two businesses and each business's separate connection to the Lizzie Borden story—indeed, the affidavit itself emphasizes the occurrence on opening day of the coffee shop, which was the anniversary of the "Borden Murders." Doc. No. 12-4 ¶ 8. The Court makes this finding based on the reasons described in the text. The affiant's opinion as to the cause of the confusion the Court finds less persuasive, as the opinion is not grounded in the facts described in the affidavit. Id. ¶¶ 10-11. This analysis applies to all the affidavits. Doc. Nos. 12-1 to 12-9.

Ghost Adventures sells tours and a bed-and-breakfast experience; Miss Lizzie's operates a coffee shop. Different goods are sold to different classes of prospective purchasers—on one hand, sophisticated buyers who come from afar with tickets or reservations to experience the Lizzie Borden House; and the other, buyers seeking food or coffee. While trademark law protects "'against use of [a] mark on any product or service which would reasonably be thought by the buying public to have come from the same source,'" Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc., 288 F. Supp. 2d 105, 118 (D.N.H. 2003), aff'd, 105 F. App'x 285 (1st Cir. 2004) (quoting 4 J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition § 24:6 (4th ed. 2002)), the absence of direct competition and the fact that the parties offer different services weakens Ghost Adventures' claim of confusion or irreparable harm to its goodwill or reputation. Bern Unlimited, Inc. v. Burton Corp., 95 F. Supp. 3d 184, 209-10 (D. Mass. 2015); Doc. No. 1 at 8.

Fifth, given the different services, the parties unsurprisingly use different trade channels. They target consumers in varying ways, each with distinctive methods of advertising. All of these reasons lead the Court to find Ghost Adventures has not shown a strong likelihood of success.

Ghost Adventures contends that it "does not claim a monopoly on the story of Lizzie Borden or its non-trademarked use; it merely seeks to protect the recognition and good will established in its registered trademark from confusingly similarly uses." Doc. No. 20 at 6. There is, however, no "confusingly similar use" here. Ghost Adventures is really claiming that, because it has registered the term "Lizzie Borden" along with one type of hatchet: (1) no one can use any of these words or any hatchet symbol in a business in the hospitality field, and (2) no one can trade on the Lizzie Borden history in the hospitality field—at least in the vicinity of Ghost Adventures' business. Ghost Adventures has not demonstrated a likelihood of success on this

broad reach. Ghost Adventures' building is a historic site bearing a historic plaque. Others can

trade on the Lizzie Borden story—which has been renowned since the trial in 1893, an event that

was termed at the time "The Trial of the Century"—provided these others do not use marks

confusingly similar to Ghost Adventures' incontestable marks. Doc. No. 17-2 at 3. Even

assuming Ghost Adventures is correct in contending that the defendants intentionally opened a

location in immediate proximity to its business, Doc. No. 12 at 11, and intentionally used the

word "Lizzie" and a hatchet in their name and signage, Doc. No. 20 at 4, given the historical

significance of the location, neither these acts alone nor the acts considered in light of the entire

record evidence an intent by the defendants to adopt Ghost Adventures' trademark.

Next, Ghost Adventures emphasizes it has an "incontestable" trademark in the term

"Lizzie Borden." Doc. No. 12 at 1. To be sure, that establishes its conclusive right to use its mark

in commerce "in connection with the good or services specified in the affidavit filed" under

§ 1065.[4] 15 U.S.C. § 1115(b). Still the statute commands that "[s]uch conclusive evidence of the

right to use the registered mark shall be subject to proof of infringement." Id. Here, Ghost

Adventures does not have a likelihood of successfully establishing that Miss Lizzie's is using

Ghost Adventures' mark. As explained above, the two hatchets are materially different, and Miss

Lizzie's does not use the complete term "Lizzie Borden" within its name and signage. Federal

law also precludes the use of a "colorable imitation of a registered mark." 15 U.S.C. § 1114.

Ghost Adventures has not, however, demonstrated a likelihood of success in establishing that

---

[4] Although Ghost Adventures has not provided the Court with Section 15 affidavits to evidence
the "incontestable" status of its trademarks, the Court overlooks this omission and additionally
takes judicial notice after having confirmed the trademarks' incontestable status through the
United States Patent and Trademark Office's online search platform. Public records, including
material on government websites, is generally subject to judicial notice. See Pietrantoni v.
Corcept Therapeutics Inc., 640 F. Supp. 3d 197, 204-05 (D. Mass. 2022). In any event, the
defendants do not challenge the "incontestable" status of the marks.

Miss Lizzie's mark is a "colorable imitation" of Ghost Adventures' mark. All aspects of it other than the use of the word "Lizzie" are different. Ghost Adventures does not have a trademark on the term "Lizzie." Nothing about the facts suggests Miss Lizzie's is imitating Ghost Adventures' "Lizzie Borden" mark, or that the use of this word amounts, on this record, to a colorable imitation of Ghost Adventures' mark.

Finally, where the multi-factor analysis points to a low likelihood of confusion, the use of a disclaimer may "tip the scales to a finding of no likelihood of confusion and no infringement." See McCarthy, supra, § 23:51. Here, Miss Lizzie's storefront displays "distinct notices stating that it has no affiliation with the Lizzie Borden House" which, in addition to the low likelihood of confusion or infringement, further distinguish the businesses. Doc. No. 17-1 at 4.

Accordingly, the Motion for a Temporary Restraining order or a Preliminary Injunction (Doc. No. 11) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge