UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| US GHOST ADVENTURES, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MISS LIZZIE'S COFFEE LLC, )<br>)<br>)<br>and )<br>)<br>JOSEPH PEREIRA, individually, )<br>)<br>Defendants. ) | Civil Action No. **1:23-cv-12116** |

**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT IN FAVOR OF US GHOST ADVENTURES, LLC**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, US Ghost Adventures, LLC ("US Ghost" or "Plaintiff") moves for entry of judgment in its favor on (i) all claims asserted by US Ghost against Miss Lizzie's Coffee LLC ("Miss Lizzie's" or "Defendant") in its Complaint. Given Miss Lizzie's failure to retain successor counsel, Defendant can no longer defend against Plaintiff's claims. Accordingly, judgment—in the proposed form attached as **Exhibit A**— should be entered without delay. By virtue of its default, Defendant has admitted the factual allegations in the Complaint and these allegations must be taken as true. *See* Fed. R. Civ. P. 8(b)(6).[1] In support of this request, Plaintiff states as follows:

**ADMITTED FACTS**

This is a trademark action seeking relief under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., particularly under 15 U.S.C. §§ 1114 and 1125, as well as Massachusetts

---

[1] "Effect of Failing to Deny. An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."

statutory and common law. (Dkt. 1 at ¶ 1). This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1116, 1121, and 1125. (*Id*. at ¶ 2). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §§ 1367(a) and 1338(b). (*Id*.). This Court has personal jurisdiction over Defendant because "Miss Lizzie's Coffee" is located in Massachusetts and Defendant operates a business that is actively and continuously infringing upon Plaintiff's trademark rights in this judicial district. (*Id*. at ¶ 3). Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(d) because Defendant, which is infringing on Plaintiff's trademark rights, is located in Fall River, Massachusetts, within this judicial district, and a substantial part of the events and/or omissions giving rise to the claims occurred in this judicial district. (*Id*. at ¶ 4).

Plaintiff is the owner of the incontestable U.S. Trademark Registration Nos. 2,070,882; 2,668,044; 3,638,210; 4,317,301 for the LIZZIE BORDEN Trademark covering a variety of goods and services, including restaurant and hotel services, with dates of first use dating back to 1996. (*Id*. at ¶ 13). Plaintiff is also the owner of U. S. Trademark Registration Nos. 4401460; 4397554; and 4,397,555 for the Hatchet Logo covering a variety of goods and services, including restaurant and hotel services, with dates of first use dating back to 2013. (*Id*. at ¶ 4). Collectively these trademarks shall be referred to as "the Marks" and restaurant and hotel services as "the Services." As a result of Plaintiff's substantially exclusive and continuous use and promotion of the Lizzie Borden House and the Services under the Marks, Plaintiff has acquired protectable common law rights in and to the Marks. (*Id*. at ¶ 15). Through continuous and exclusive use, the purchasing public has come to associate the Marks with a single source of hospitality and other services, and as such, the Marks have accrued significant value and goodwill. (*Id*. at ¶ 16).

The Marks are, and have been continuously, used in connection with operation of a bed and breakfast-styled commercial attraction at the Lizzie Borden® House, a plot of real property located at 230 Second Street in Fall River, Massachusetts (the "House"). (*Id*. at ¶¶ 10, 15-16). The House is the location of the 1892 unsolved double murder of Lizzie Borden's father and stepmother. (*Id*. at ¶ 10). Plaintiff offers guided ghost tours, museums, and hospitality services at the House, which are the result of Plaintiff's research, collection, interpretation and exhibition of the heritage and history relating to the alleged murders. (*Id*. at ¶ 11). Plaintiff has invested substantial time, effort, and money to promote its Marks in connection with the museum, bed and breakfast, gift shop, and tourist venue. (*Id*. at ¶¶ 11-12).

Miss Lizzie's Coffee opened in August 2023 at 242 Second Street in Fall River, Massachusetts, directly next door to the House. Miss Lizzie's Coffee advertises, markets, promotes, provides, and otherwise offers hospitality services ("Infringing Services") under the identical and/or nearly identical marks, "MISS LIZZIE'S COFFEE" alongside an image of a hatchet (the "Infringing Marks") on its signage. (*Id*. at ¶¶ 17-19). Defendant advertises and markets the Infringing Marks on https://misslizziescoffee.com/ as well as social media sites such as Facebook and Instagram. (*Id*. at ¶ 20). "Miss Lizzie's Coffee," based on its name, logo/graphics, and proximity to Plaintiff's place of business, deceptively confuses unsuspecting customers by creating a false association that Defendant's services are affiliated with, approved by, and/or licensed from Plaintiff. (*Id*. at ¶ 21). Defendant's use of the Infringing Marks is an attempt to trade on the goodwill and commercial success that Plaintiff has built up in the Marks and their corollary registrations and an attempt to free ride on Plaintiff's success as a preeminent and well-known provider of hospitality services in Fall River, Massachusetts. (*Id*. at ¶ 23).

116744035.1

Defendant's identical and/or nearly identical use of the Infringing Marks in connection with the Infringing Services has caused actual confusion, and is likely to continue to cause actual confusion and false affiliation before, during, and after the time of purchase because consumers, prospective consumers, and others viewing Defendant's Infringing Services during preliminary research, the point of sale, or any point in the ordinary channels of trade and commerce, are likely to confuse Plaintiff's Marks and registrations with Defendant's Infringing Marks with respect to source, affiliation, association, and sponsorship. (*Id*. at ¶ 24). Given the close proximity of Plaintiff and Defendant's businesses, consumers who attempt to patronize "Miss Lizzie's Coffee" inquire as to the suspected association between the two entities and guests of Plaintiff's bed and breakfast inquire as to Plaintiff's suspected association with "Miss Lizzie's Coffee" as well. (*Id*. at ¶ 25). Consumers are thus likely to continue to be confused as to the source of the respective parties' offerings and the affiliation between Plaintiff and Defendant. (*Id*. at ¶ 26). By causing actual confusion, and continuing to cause a likelihood of further confusion, mistake, and deception, and because Plaintiff has no ability to control the quality of the services offered by Defendant, Plaintiff has suffered irreparable harm to the goodwill symbolized by the Marks, their registrations, and the reputation for quality that they embody. (*Id*. at ¶ 27).

In order to protect its customers and reputation, US Ghost filed this action on September 18, 2023, seeking injunctive relief and monetary relief against Defendant for: (1) infringement of federally registered trademarks in violation of Section 32 of the Lanham Act, as amended, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a); (3) trademark dilution pursuant to 15 U.S.C. § 1125(c); (4) trademark dilution pursuant to M.G.L. c. 110H, § 13; (5) trademark infringement pursuant to Massachusetts common law; (6) unfair competition pursuant to Massachusetts

common law; and (7) unfair trade practices pursuant to M.G.L. c. 93A. On September 8, 2025, this Court, pursuant to Rule 55(a), entered default against Defendant due to its failure to retain successor counsel, and its corollary inability to no longer defend against Plaintiff's claims. (Dkt. 87).

US Ghost now seeks a default judgment against Miss Lizzie's along with a permanent injunction to prevent Miss Lizzie's, its successors and assigns, and its officers, employees, agents, and all persons acting in concert with Miss Lizzie's, from infringing US Ghost's trademarks. US Ghost also seeks an award of damages for Defendant's infringement of US Ghost's registered trademarks.

## LAW AND ARGUMENT

**A.     Plaintiff Has Met the Prerequisites for a Default Judgment and Liability Should be Imposed on the Defaulting Defendant.**

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. *See, e.g., CNE Direct, Inc. v. Blackberry Corp.*, 55 F. Supp. 3d 233, 234 (D. Mass. 2014). First, under Fed. R. Civ. P. 55(a), the clerk must enter a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). US Ghost has made this showing. (Dkt. 86). Upon the entry of a default, the well-pleaded factual allegations of the Complaint are taken as true. See Fed. R. Civ. P. 8(b)(6); *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002); *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability*."); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("There is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of

5

its…claims must be considered established as a matter of law."). As detailed below, taking all the well-pleaded facts alleged as true, US Ghost is entitled to default judgment against Miss Lizzie's. *See Rabbinical Council of Massachusetts v. Int'l Food Prods., Inc.*, No. 22-CV-11460-AK, 2023 WL 7004052 at * 7 (D. Mass. Oct. 24, 2023) (granting motion for default judgment in trademark infringement action, permanently enjoining defendant to stop using the mark and take immediate corrective action, and awarding damages totaling $593,829.67); *Stillwater Designs & Audio, Inc. v. eBay Reseller "archer_store"*, No. 1:23-CV-11210-IT, 2023 WL 7195690, at *2 (D. Mass. Nov. 1, 2023) (granting motion for default judgment in trademark infringement action, permanently enjoining defendant from utilizing plaintiff's intellectual property and awarding statutory damages).

B.   **Plaintiff Has Set Forth Valid Trademark Infringement Claims and Valid Unfair Competition Claims.**

A plaintiff establishes a trademark infringement claim by alleging (1) "that its mark[s] [are] entitled to trademark protection," and (2) "that the allegedly infringing use is likely to cause consumer confusion." *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008).[2] With respect to the first element, "[r]egistration [on the Principal Register of the United

---

[2] Evaluation of Plaintiff's infringement claim also establishes the required elements for the claims of unfair competition and false designation of origin under 15 U.S.C. § 1125(a). *N. Light Tech. Inc. v. N. Lights Club*, 97 F. Supp. 2d 96, 120 (D. Mass. 2000) ("where the basic allegation is trademark infringement, the evaluation of the…15 U.S.C. § 1114(a) claim suffices to establish likelihood of success on this [15 U.S.C. § 1125(a)] claim") (citing *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639-40 (1st Cir. 1992)).

The evaluation of Plaintiff's federal infringement and unfair competition claims also establishes the required elements for its state law claims. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 861 n.2, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ("[T]he purpose of the Lanham Act was to codify and unify the common law of unfair competition and trademark protection."); *Jenzabar, Inc. v. Long Bow Group, Inc.*, 82 Mass. App. Ct. 648, 654 n.11, 977 N.E.2d 75 (2012) ("The gravamen of a claim of trademark infringement under Massachusetts common law is the same as under the Lanham Act"). See also *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 n.7 (1st Cir. 2013) (common law

States Patent and Trademark Office] serves as *prima facie* evidence that the trademarks are entitled to protection." *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 (1st Cir. 2013).

Plaintiff has established through its well-pleaded allegations that Plaintiff has registered the Marks and thus possesses an incontestable trademark in 'Lizzie Borden' and its hatchet which is entitled to protection. (Dkt. 1 at ¶¶ 12-15). *U.S. Patent & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298, 2302 (2020) ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a presumption that the mark is valid.'" (citation omitted)).

The second element requires that Plaintiff's Complaint set forth facts to plausibly suggest that Defendant's use of the Marks is likely to cause confusion. *Bose*, 732 F.3d at 26. Beyond the mere likelihood of causing confusion, as set forth in the Complaint, Miss Lizzie's is using the Marks in a manner that has caused and continues to cause actual confusion. Given the close proximity of Plaintiff and Defendant's businesses, consumers who attempt to patronize Defendant's business have inquired as to the suspected association between the two entities and guests of Plaintiff's bed and breakfast have inquired as to Plaintiff's suspected association with Defendant as well. (Dkt. 1 at ¶ 25). Defendant began using the Marks, and continues to use the Marks, in a manner that caused and continues to cause customer confusion, including numerous and continuous events of customers purchasing Defendant's liquid beverages under the belief that Defendant's business and the House are the same or related business and becoming agitated at

---

trademark infringement claims in Massachusetts require same elements as Federal trademark infringement claims); *Leejay, Inc. v. Bed Bath & Beyond, Inc.*, 942 F. Supp. 699, 701 n.2 (D. Mass. 1996) ("trademark infringement is defined in essentially the same terms under the Lanham Act and under Massachusetts law"); *Black Dog Tavern Co. v. Hall*, 823 F. Supp. 48, 53–54 (D. Mass. 1993) (same).

116744035.1

Plaintiff for being told outside beverages are not allowed, resulting in loss of goodwill for the Plaintiff. (*Id*. at ¶¶ 29-44).

By confusing consumers as to the origin of the services provided, Defendant is intentionally trading on the goodwill and commercial success that Plaintiff has built up in the Marks and their corollary registrations and Plaintiff's success as a preeminent and well-known provider of hospitality services in Fall River, Massachusetts. (*Id*. at ¶ 23). As such, Plaintiff has proven its trademark infringement and unfair competition claims under 15 U.S.C. §§ 1114, 1125. Thus, for these reasons, Plaintiff is likely to succeed on the merits of its Lanham Act claims. Given that "[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability" (*Franco* 184 F.3d at 9 n.3), Plaintiff has alleged facts sufficient to show that its Complaint sets forth facts that plausibly establish a basis for liability for its trademark infringement and false advertising / unfair competition claims under 15 U.S.C. §§ 1114, 1125.

**C.    Plaintiff is Entitled to a Permanent Injunction.**

Plaintiff seeks injunctive relief to prevent further harm to its brand and to consumers currently being duped by Defendant's misconduct. Plaintiff has suffered, and continues to suffer, irreparable harm to its reputation and goodwill because of Defendant's harmful conduct, making injunctive relief especially appropriate. *See AW Chesterton Co., Inc. v. Chesterton*, 128 F.3d 1, 5 (1st Cir. 1997). The First Circuit employs a four-part test to determine the propriety of injunctive relief: (1) whether the plaintiff has demonstrated a likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether the injury to the plaintiff outweighs any harm which granting the injunction will impose on the defendant; and (4) whether the public interest will be adversely affected by the granting of the injunction. *Equine*

*Technologies, Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995). "Where a plaintiff seeks permanent injunctive relief, the test is the same [as for preliminary injunctive relief], except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of success." *Caroline T. v. Hudson School Dist.*, 915 F.2d 752, 755 (1st Cir. 1990) (citations and quotations omitted). Plaintiff meets all the requirements for permanent injunctive relief, and an injunction is appropriate under 15 U.S.C. § 1116.

        1.      **Plaintiff Has Succeeded on the Merits of its Claims.**

As discussed above, Plaintiff has established: (1) Defendant has infringed upon the Marks, in violation of the Lanham Act, 15 U.S.C. § 1114; and (2) Defendant engaged in false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125. Further, here, as Defendant has defaulted, Plaintiff has demonstrated not only likely success but <u>actual</u> success on the merits. *Cadillac Unif. & Linen Supply, Inc. v. Cent. Gen. de Trabajadores*, No. CV 19-2060 (ADC), 2020 WL 4289389, at *6 (D.P.R. July 7, 2020), *report and recommendation adopted sub nom. Cadillac Uniforms & Linen Supply, Inc. v. Cent. Gen. de Trabajadores*, No. CV 19-2060 (ADC), 2020 WL 4289365 (D.P.R. July 27, 2020) (citing *Twist and Shout Music v. Longneck Xpress NP*, 441 F. Supp. 2d. 782, 785 (E.D. Tex. 2006) ("Here, the entry of default against Defendant is tantamount to actual success on the merits"); *Tracfone Wireless, Inc. v. Hernández*, 196 F. Supp. 3d 1289, 1301 (S.D. Fla. 2016) ("the default against Defendant satisfies the element of success on the merits.")). Accordingly, Plaintiff has satisfied the first element of a permanent injunction.

        2.      **Irreparable Injury Will Result in the Absence of an Injunction.**

A showing of irreparable harm requires "an actual, viable, presently existing threat of serious harm" that cannot adequately be remedied through money damages alone. *Bio-Imaging*

116744035.1

*Techs., Inc. v. Marchant*, 584 F. Supp. 2d 322, 330 (D. Mass. 2008). "In this Commonwealth, the loss of goodwill has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief." *Bowne of Boston, Inc. v. Levine*, No. CIV.A. 97-5789A, 1997 WL 781444, at *5 (Mass. Super. Nov. 25, 1997) (collecting cases and granting injunctive relief for potential loss of goodwill). As the First Circuit has recognized, "irreparable harm flows from an unlawful trademark infringement as a matter of law." *Nestle*, 982 F.2d at 640 (emphasis supplied). "By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot be adequately compensated." *Id*. This Court has stated, in reference to whether a plaintiff will suffer irreparable harm without an injunction, "irreparable harm flows from an unlawful trademark infringement as a matter of law," as "the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992).

Because Plaintiff has clearly demonstrated that Defendant has engaged in unlawful trademark infringement, irreparable harm is presumed. *Nestle*, 982 F.2d at 640; *see also Rabbinical Council of Massachusetts v. Int'l Food Prods., Inc.*, No. 22-CV-11460-AK, 2023 WL 7004052, at *7 (D. Mass. Oct. 24, 2023) (finding that irreparable harm was presumed due to defendant's infringement of plaintiff's trademark). Above and beyond this presumption, the admitted allegations in the Complaint further prove that Defendant's misconduct is causing irreparable harm to consumers as well as Plaintiff. First, consumer deception gives rise to the finding of irreparable harm. *See, e.g., Spruce Envt'l. Techs., Inc. v. Festa Radon Techs.*, Co., No. 15-11521-NMG, 2015 WL 4038802, at *5 (D. Mass. July 2, 2015) (allegations that deceptive advertising could

10

potentially affect the purchasing decisions of consumers were sufficient to satisfy irreparable harm element). Here, Defendant's usage of the Marks in close proximity to Plaintiff's business has caused customers to believe that there is an association between the two entities. (Dkt. 1 at ¶ 25). Defendant's actions substantially harm Plaintiff and consumers who ultimately patronize Plaintiff's business believing it to be associated with Defendant's business. Defendant's actions cause consumers confusion as to the origin of the services offered by Plaintiff and harms the Plaintiff's goodwill when Plaintiff is required to correct Defendant's actions to confused consumers. (*Id*. at ¶ 26).

This irreparable injury arises due to the infringer depriving Plaintiff of its "ability to control the nature and quality of a product which the public believes it provides." See *Jordan K. Rand, Ltd. v. Lazoff Bros, Inc.*, 537 F.Supp. 587, 597 (D.P.R. 1982). Further, even if Defendant "matched the high quality of plaintiff's product ... plaintiff is still entitled to have its reputation within its control." *Id*. (citing *Ambassador East, Inc. v. Orsatti, Inc.*, 257 F.2d 79, 82 (3d Cir. 1958); *Louis Rich, Inc. v. Horace W. Longacre, Inc.*, 42 F.Supp. 1327 (E.D. Pa. 1976)). Damage to Plaintiff's goodwill, which has an intangible value, should thus be considered. See *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); see also *Jordan K. Rand, LTD*, 537 F.Supp. at 597. Courts within this Circuit have found similarly in the context of issuing a preliminary injunction,

> As the court in *Northern Queens Bakery, Inc.*, explained:
>
>> A trademark epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase—this is the reason d'etre for the sale. The need to issue a preliminary injunction where a former licensee continues to use

11

> a trademark after its license to do so has been revoked is compelling because of the danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.

*N. Queens Bakery, Inc.*, 216 F.Supp.2d at 40 (internal quotation marks and citations omitted); id. ("Where the party seeking a preliminary injunction in a trademark case shows that it will lose control over the reputation of its trademark pending trial, the requirement of irreparable injury is satisfied.") (internal quotation marks omitted); *id*. ("[D]amages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm."); *see also El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2nd Cir.1986)("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").

*Dunkin' Donuts Franchised Restaurants LLC v. ABM Donuts, Inc.*, No. CA 11-270 S, 2011 WL 6026129, at *6 (D.R.I. Oct. 4, 2011), report and recommendation adopted, No. CA 11-270 S, 2011 WL 6026120 (D.R.I. Dec. 2, 2011).

Injunctive relief is thus needed to mitigate and prevent further irreparable harm to consumers and also to Plaintiff.

### 3. The Harm to Plaintiff Far Outweighs the Harm Defendant Would Suffer from the Imposition of an Injunction.

While consumers and Plaintiff continue to suffer irreparable harm, Defendant reaps the benefits of infringing on Plaintiff's Marks and trading upon Plaintiff's goodwill. The injunctive relief requested in this Motion would not cause harm to Defendant, who is not authorized to use the Marks and whose actions are therefore undeserving of legal protection. Meanwhile, the integrity of the Marks and their reputation for high quality services is all threatened by Defendant's misconduct. Accordingly, the balance of the harms weighs heavily in favor of Plaintiff.

### 4. An Injunction Serves the Public Interest.

116744035.1

Granting an injunction here serves the public interest by ensuring that Defendant ceases its trademark infringement. An injunction would allow Plaintiff to restore and repair its brand to the status it enjoyed before Defendant's trademark infringement. In a trademark case such as this, "the right of the public [is] not to be deceived or confused." *Liquid Glass Enterprises, Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 403, 407 (D.N.J. 1998) (quoting *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990)); see also *Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). A permanent injunction forbidding Defendant's continued utilization of the Marks will prevent this confusion and further harm to the public.

**D.     Plaintiff is Entitled to Recover Disgorged Profits, Damages and Out-of-Pocket Costs for Defendant's Trademark Infringement and Unfair Competition.**

Under 15 U.S.C. § 1117(a), "When a violation of any right of the registrant of a mark ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

As set forth in the attached Affidavit of Lance Zaal, Defendant owes Plaintiff at least $26,000.00 for Defendant's profits, $40,000.00 for Plaintiff's lost business, $20,000.00 in estimated damages to Plaintiff's goodwill, and $10,000.00 in out-of-pocket expenses for lost employee and management time spent mitigating consumer confusion. *See* Affidavit of Lance Zaal ¶¶ 20-24, attached hereto as **Exhibit A**.

Plaintiff thus seeks disgorgement and damages in the total amount of $96,000.00 for infringement of the Marks. In the interest of good faith, believes a $96,000.00 total award will serve the goals of compensating Plaintiff, deterring Defendant's future conduct, and deterring

13

others from similar misconduct.³ Even if collection from Defendant proves infeasible Plaintiff can use this judgment to deter other similar wrongdoers in its effort to protect the consuming public from similar misconduct as well as protect Plaintiff's brand name. *EMI Mills Music*, 470 F. Supp. 2d 67 at 75; *Mitchell Int'l*, 2006 WL 2226052, at *9; *Rodgers*, 2005 WL 950021, at *2. Accordingly, a $96,000.00 award would be legally sound, justified by the harm suffered by Plaintiff, and irrespective of collectability useful for deterrence purposes in order to protect the consuming public from similar misconduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant, providing the following relief:

   A.   Finding that, (i) as to Counts I and V, Defendant through its use of "MISS LIZZIE'S COFFEE" alongside an image of a hatchet (the "Infringing Marks") infringed upon the incontestable U.S. Trademark Registration Nos. 2,070,882; 2,668,044; 3,638,210; and 4,317,301 for the Lizzie Borden name and trademark and U.S. Trademark Registration Nos. 4,401,460; 4,397,554; and 4,397,555 for the hatchet image (the "Marks"); and (ii) as to Counts II and VI, Defendant's infringement constitutes unfair competition in violation of 15 U.S.C. § 1125(a); and

   B.   Ordering that Defendant, its officers, agents, servants, employees, and any persons or entities acting in concert or participation with it, are hereby enjoined from any and all unauthorized use of the Infringing Marks, the Marks or any other confusingly similar variant thereof. Defendant is ordered to take immediate corrective action to remove the Infringing Marks and any and all other infringing usage from within or outside of its brick-and-mortar storefront,

---

³ While Plaintiff believes it is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a), in the interest of streamlining this Motion and presenting a conservative monetary figure, Plaintiff is not seeking such a recovery from Defendant.

116744035.1

and/or remove any and all infringing usage from its website, and to destroy any and all infringing labels and/or products bearing infringing labels; and

    C.    Awarding Plaintiff the sum of $96,000.00 from Defendant.

    D.    Awarding Plaintiff any other relief as this Court deems just and proper.

A proposed order is attached hereto in accordance with the Court's standing order on default judgments.

Dated: October 8, 2025

Respectfully Submitted,

Plaintiff
US GHOST ADVENTURES LLC

By its attorneys,

/s/ *Mikaela R. DeCortin*
Mikaela Rice DeCortin (BBO No. 707651)
Strang, Scott & Giroux LLP
6 Beacon Street, Suite 815
Boston, MA 02108
857-233-5534
mdecortin@strangscott.com

Timothy Bechen (VSB No. 83639)
Woods Rogers, PLC
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 343-5032
Email: timothy.bechen@woodsrogers.com

Pietro F. Sanitate (VSB No. 89538)
Woods Rogers, PLC
Riverfront Plaza, West Tower
901 East Byrd Street, Suite 1550
Richmond, VA 23219
Phone: (804) 434-5029
E-mail:pietro.sanitate@woodsrogers.com
*Counsel for Plaintiffs*

15

116744035.1

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those parties which are non-registered participants.

Date: October 8, 2025                                         /s/ *Mikaela R. DeCortin*
                                                              Mikaela R. DeCortin