UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| US GHOST ADVENTURES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MISS LIZZIE'S COFFEE LLC and JOSEPH PEREIRA,<br><br>Defendants. | Civil No. 23-12116-LTS |

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (DOC. NO. 109)

October 8, 2026

SOROKIN, J.

US Ghost Adventures, LLC, moves for default judgment against Miss Lizzie's Coffee LLC ("the LLC defendant") and Joseph Pereira (collectively, "Defendants"). Doc. No. 109. In doing so, US Ghost seeks a finding of liability, injunctive relief barring Defendants from using several allegedly infringing marks, disgorged profits, damages, costs, and attorneys' fees. Though US Ghost is entitled to a finding of liability and attorneys' fees as a sanction for Defendants' litigation misconduct, its remaining requests for relief are denied. US Ghost's Motion for Default Judgment is therefore ALLOWED IN PART and DENIED IN PART.

## I. BACKGROUND[1]

The Court begins by again recounting the facts and now-lengthy procedural history in this case. In August 2023, Joseph Pereira opened a coffee shop, Miss Lizzie's Coffee, next door to the Lizzie Borden House, the site of a museum and bed-and-breakfast operated by US Ghost. Doc. No. 1 ¶¶ 5, 17–18. Shortly thereafter, a certificate of organization for Miss Lizzie's Coffee LLC was filed with the Commonwealth of Massachusetts, listing Pereira as the LLC's sole agent and manager. Doc. No. 1-3. In September 2023, US Ghost filed suit against Pereira and the LLC defendant, alleging trademark infringement, unfair competition, false designation of origin, and trademark dilution. Doc. No. 1. All of US Ghost's claims against Pereira and the LLC defendant allege joint liability.[2] Id. ¶¶ 29–78.

US Ghost sought a preliminary injunction barring Defendants from using certain allegedly infringing marks. Doc. No. 11. After full briefing and a contested hearing, the Court denied the preliminary-injunction motion because US Ghost had not established a likelihood of success on the merits. Doc. No. 24. US Ghost appealed, and the First Circuit affirmed. See US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC, 121 F.4th 339 (1st Cir. 2024).

While the case was on appeal, defense counsel repeatedly sought, and eventually were permitted, to withdraw from their representation. Doc. Nos. 37, 38, 44, 52, 53, 58. The attorneys' withdrawal left the LLC defendant without representation for more than six months. See Doc. Nos. 58, 67, 72, 78. Despite the Court's repeated admonishments that a business entity cannot represent itself and that failure to retain counsel would lead to default, the LLC defendant

[1] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header, or, for documents enumerated by paragraph, to paragraph numbers.

[2] To the extent that any allegedly infringing acts predate the LLC's creation, US Ghost seeks to recover against Pereira individually. Doc. No. 1 ¶ 17 n.1. US Ghost asserts no claims solely against the LLC defendant.

never retained new counsel. Doc. Nos. 51, 54, 58, 67, 72. Accordingly, the Clerk entered default against the LLC defendant in September 2025. Doc. No. 86. US Ghost subsequently moved for default judgment against the LLC defendant, Doc. No. 91, which the Court denied without prejudice in October 2025 in order to avoid the risk of inconsistent judgments. Doc. No. 97. The Court clarified, however, that US Ghost could "renew its motion, or file a new one, once its claims against Pereira [were] resolved." Id. at 4.

Pereira represented himself as discovery continued in the case. US Ghost filed a motion to compel on June 17, 2025, Pereira failed to respond to that motion, and the Court allowed the motion to compel in part. Doc. No. 73. The Court also ordered Pereira to show cause why he should not be sanctioned for the failure to respond to US Ghost's discovery requests. Id. Pereira did not produce discovery as required by the order allowing US Ghost's motion to compel in part. Nor did Pereira respond to the Court's order to show cause. The Court then held a hearing on September 8, 2025, in which it reiterated Pereira's discovery obligations and referred the discovery matter to Magistrate Judge Boal. Doc. No. 84. On October 21, 2025, Magistrate Judge Boal ordered Pereira to respond to certain of US Ghost's discovery requests within thirty days, but Pereira again did not respond. Doc. Nos. 95, 100.

On December 23, 2025, US Ghost moved for an entry of default against Pereira on the grounds that he had not complied with Magistrate Judge Boal's order to timely produce discovery. Doc. No. 99. Pereira did not timely oppose this motion. See Doc. No. 100. On January 13, 2026, the Court ordered Pereira to respond to the motion for entry of default by January 27, 2026. Id. The Court warned Pereira that "[f]ailure to comply with court orders, including this Order, can result in sanctions up to and including default." Id. Pereira did not respond. See Doc. No. 103. US Ghost filed a renewed motion for entry of default on February

6, 2026, Doc. No. 102, which the Court allowed on February 11, 2026, Doc. No. 103. The Court found that though Pereira provided belated responses to US Ghost's written discovery requests, those responses were "woefully inadequate." Id. Moreover, the Court recounted Pereira's repeated failures to comply with court orders despite being warned of the consequences. Id.

The next day, Pereira moved to set aside the entry of default. Doc. No. 106. He contended that he had "answered all questions and interrogatories as per the time allowed by the Court" and that he felt he was being penalized because US Ghost "does not like the answers" he gave. Id. Because Pereira in no way reckoned with his failure to comply with court orders or undermined the Court's finding that Pereira's discovery responses were plainly inadequate, the Court denied his motion to set aside. Doc. No. 107.

On March 9, 2026, US Ghost again moved for default judgment, this time as to both the LLC defendant and Pereira. Doc. No. 109. In this motion, US Ghost sought several forms of relief. First, US Ghost asked for a finding that Defendants had infringed upon several protected trademarks. Doc. No. 110 at 16. Second, US Ghost requested "[a] permanent injunction forbidding Defendants' continued utilization" of the allegedly infringing marks. Id. at 14. Third, US Ghost sought to recover "defendant's profits," which it estimated at $63,000. Id. at 14–15. Fourth, US Ghost requested damages and costs, which it estimated at $95,000 for "lost business," $35,000 for "damages to Plaintiff's goodwill," and $15,000 for "out-of-pocket expenses for lost employee and management time spent mitigating consumer confusion." Id. at 15. Fifth, US Ghost argued that it was entitled to attorneys' fees totaling $31,207. Id. at 16.

The Court ordered Pereira to respond to US Ghost's motion by March 23, 2026. Doc. No. 111. Pereira timely responded, notifying the Court for the first time that his wife's health issues had interfered with his ability to focus on this lawsuit. Doc. No. 113. Pereira also stated

that he had asked US Ghost for more time to respond but that it would not agree to give him an extension. Id.

On April 29, 2026, and while US Ghost's Motion for Default Judgment was under consideration, Pereira again moved to set aside the default entered against him on February 12, 2026. Doc. No. 116. Pereira explained that, beginning in October 2025, he undertook significant caregiving responsibilities for his wife. Id. at 2. Pereira also stated his wife has recovered, and he has begun to produce the outstanding discovery. Id. Pereira therefore proposed that he would respond to US Ghost's interrogatories by May 15, 2026, and to its requests for production by May 29, 2026. Id. at 3. In an April 30, 2026, order, the Court noted that Pereira's failures to comply with court orders and to produce discovery predated his wife's illness. See Doc. No. 117. The Court also noted that Pereira never requested extensions from the Court, and that his initial motion to set aside did not provide any explanation for his failure to comply with court orders. Id. However, recognizing the Federal Rules' clear preference for resolution on the merits, the Court did not deny Pereira's motion to set aside. Instead, the Court ordered US Ghost to respond to it by May 22, 2026. Id. In addition, the Court approved the discovery response timeline that Pereira proposed. Id.

On June 22, 2026, however, and after further briefing, the Court denied Pereira's motion to set aside default. Doc. No. 123. The Court acknowledged that Pereira had by then responded to US Ghost's interrogatory requests. Id. But the Court concluded that his responses did not substantially or in good faith respond to US Ghost's requests. Id. And the Court highlighted that Pereira had failed to respond to US Ghost's requests for production. Id.

In the same order, the Court emphasized that US Ghost's motion for default judgment as to the LLC defendant and Pereira remained pending. Id. The Court noted that, while Pereira had

filed an opposition, that opposition provided only a limited response to the arguments made by US Ghost. Id. The Court nonetheless provided Pereira an additional opportunity to oppose Ghost's motion for default judgment in light of the unusual posture of the case. Id. Specifically, the Court noted that US Ghost sought a default judgment of approximately $240,000 against a self-represented small-business owner on claims as to which the Court had found—and the First Circuit had affirmed—no likelihood that US Ghost would prevail on the merits. Id.

On July 9, 2026, Pereira timely filed a supplemental opposition to US Ghost's motion for default judgment. Doc. No. 125. In that opposition, Pereira stated that he had "rewritten and properly answered" US Ghost's interrogatories. Id. at 1. In addition, Pereira explained that Miss Lizzie's Coffee had moved from its original location next to the Lizzie Borden House at 242 Second Street in Fall River to another location in Fall River at 100 Rock Street. Id. Finally, Pereira emphasized that Miss Lizzie's Coffee had "continuously posted several signs in their front windows and door stating that Miss Lizzie's Coffee has no connection to" US Ghost's establishment. Id. US Ghost timely replied to Pereira's supplemental opposition. Doc. No. 127.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 "provides a two-step process for default judgment." Universitas Educ., LLC v. Granderson, 98 F.4th 357, 377 (1st Cir. 2024). First, "the clerk must enter the party's default" if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit." Fed. R. Civ. P. 55(a). Upon the entry of default, "each of [the plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law." Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985). Although entry of default may establish liability, it does not establish the amount of damages owed to the plaintiff for purposes

of default judgment. See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 34 n.7 (1st Cir. 1980).

Second, and once a default is entered, the Court can issue a default judgment to a party that moves for one under Rule 55(b). See Fed. R. Civ. P. 55(b). In general, "Rule 55 grant[s] wide discretion to the district court." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 63 (1st Cir. 2002). "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when the defendant is technically in default." Hutchins v. Cardiac Sci., Inc., 456 F. Supp. 2d 173, 190 (D. Mass. 2006) (citation modified).

Similarly, Federal Rule of Civil Procedure 37 permits the Court to impose a range of sanctions against a party that "fails to obey an order to provide or permit discovery," including "rendering a default judgment." See Fed. R. Civ. P. 37(b)(2)(A)(vi). The First Circuit has provided a non-exhaustive list of factors to consider when weighing the imposition of sanctions under Rule 37, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015). And, if the Court concludes that a party has disobeyed a discovery order under Rule 37, the Court "must order the disobedient party" to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Like with Rule 55, the Court has "broad discretion" when "imposing sanctions under Rule 37." United States v. Klimavicius, 847 F.2d 28, 31 (1st Cir. 1988).

Finally, the Court also has "considerable latitude" to "issu[e] sanction orders" under its "inherent power to control and regulate proceedings." See Pimentel-Soto, 957 F.3d 82, 85 (1st Cir. 2020). "In general, a court may levy such a sanction upon finding that a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In re Plaza-Martinez, 747 F.3d 10, 13 (1st Cir. 2014) (citation modified). Sanctions are also appropriate for "the willful disobedience of a court order." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980) (citation modified). Such sanctions can include the imposition of attorneys' fees. See id.

## III. DISCUSSION

First, the Court decides whether, in its "wide discretion" and as a threshold matter, entry of default judgment is appropriate against the LLC defendant and Pereira. See Ortiz-Gonzalez, 277 F.3d at 63. For the reasons explained below, entry of default judgment against both the LLC defendant and Pereira is justified. Second, the Court considers the scope of relief that US Ghost is entitled to pursuant to that default judgment. The previous entry of default compels US Ghost's requested finding of liability. In addition, an award of attorneys' fees is warranted as a sanction for Defendants' litigation misconduct. The Court otherwise declines to award US Ghost a permanent injunction, disgorged profits, damages, or costs.

### A. Default Judgment

First, entry of default judgment is warranted against both the LLC defendant and Pereira. Start with the LLC defendant. The Court repeatedly warned that a business defendant cannot represent itself. See Doc. Nos. 51, 54, 58, 67, 72. The LLC defendant had numerous opportunities and more than half a year to obtain counsel after its prior counsel withdrew. The LLC defendant did not do so. The Clerk therefore entered a default under Rule 55(a) against the LLC defendant. Doc. No. 86. US Ghost has now moved for default judgment against the LLC defendant under Rule 55(b). Doc. No. 91; Doc. No. 109. Though the Court previously declined

to enter default judgment against the LLC defendant alone given the risk of inconsistent judgments, Doc. No. 97, this possibility is no longer a concern now that Pereira has defaulted, too. As a result, and in light of the LLC defendant's failure to obtain the counsel necessary to permit this case to proceed, entry of default judgment against the LLC defendant is now appropriate.

So, too, with Pereira. Indeed, entry of default judgment is warranted under Rule 37 alone as a sanction for Pereira's failures to obey the Court's discovery orders. See Fed. R. Civ. P. 37(b)(2)(A)(vi). The "severity" and "repetition of violations" in this case particularly counsel towards the imposition of default judgment under Rule 37. See AngioDynamics, 780 F.3d at 435. This Court—as well as Magistrate Judge Boal—repeatedly ordered Pereira to comply with various discovery obligations in the case. See Doc. Nos. 73, 95, 106. In many instances, Pereira failed to produce any discovery at all. See Doc. Nos. 95, 100, 123. Other times, he provided responses that were "woefully inadequate" or apparently not in "good faith." See Doc. Nos. 103, 123. This was the case even after the Court provided multiple extensions to the initial discovery response timeline. See Doc. Nos. 103, 117.

Today, Pereira is still yet to comply with his discovery obligations, even pursuant to deadlines that he himself proposed. See Doc. No. 117 ("Pereira says he will respond to the interrogatories by May 15, 2026, and to the requests for production by May 29, 2026."). Pereira has apparently produced no discovery responsive to US Ghost's requests for production. See Doc. No. 123; Doc. No. 127 at 3. And though Pereira produced revised answers to US Ghost's interrogatories, some of these answers remain inadequate. See Doc. No. 126. For instance, Pereira was asked to "[s]tate every instance in which you gave a media interview regarding Miss Lizie's [sic] Coffee and the instant dispute." Id. at 2. Pereira replied:

> I do not document nor have I documented such interviews. Many times someone can call me and make an appointment to come in. Also many just come unannounced and try to talk. I find these so-called interviews unimportant and I don't really think about them nor do I seek them out.

Id. Pereira's failure to even attempt to provide an accounting of media interviews he has given is representative of his broader refusal to engage with the discovery process in good faith.

Nor has Pereira provided a "legitima[te] . . . excuse for failing to comply" with the Court's discovery orders. AngioDynamics, 780 F.3d at 435. Pereira argued that "his wife's health issues had interfered with his ability to focus on this lawsuit." Doc. No. 117 (citing Doc. No. 113). But, as previously noted, Pereira's failure "to produce discovery pre-dated his wife's illness." Id. Pereira's discovery misconduct therefore amply justifies the entry of default judgment under Rule 37 alone.

Entry of default judgment against Pereira is also appropriate under Rule 55. As with the LLC defendant, the Clerk has entered a default against Pereira under Rule 55(a). Doc. No. 104. And US Ghost has now moved for default judgment against Pereira, too, under Rule 55(b). Doc. No. 109. These procedural requirements satisfied, entry of default judgment is warranted under Rule 55 because Pereira's failure to adequately engage with discovery has mirrored his approach to this litigation more broadly. Pereira failed to timely oppose US Ghost's initial motion for entry of default in December 2025. Doc. No. 100. When the Court provided Pereira an additional two weeks to respond, he still did not do so. Id. When Pereira moved—for a second time—to set aside the subsequent entry of default without "explain[ing] why he never requested extensions from the Court if he could not meet deadlines," the Court nonetheless ordered US Ghost to respond in light of the fact that "the Federal Rules express a clear preference for resolution on the merits." Doc. No. 117. And when Pereira filed a response to US Ghost's motion for default judgment that "engaged in (at best) a limited response to the arguments made

by US Ghost," the Court still gave Pereira "a further opportunity to oppose the [motion] and the relief sought." Doc. No. 123. Now having filed a supplemental opposition in response to the Court's order, Pereira again fails to engage with US Ghost's arguments as to why default judgment is appropriate here. See Doc. No. 125.

The Court has given Pereira chance after second chance to participate in the discovery process, comply with the Court's orders, and defend his case. After more than a year of noncompliance, the Court concludes that entry of default judgment is a justified sanction against Pereira under Rule 55(b) and Rule 37.

B. US Ghost's Requested Relief

Having concluded that default judgment is appropriate against Defendants, the Court now assesses the scope of relief afforded in connection with that judgment. US Ghost requests a finding that Defendants infringed upon its protected marks and therefore committed unfair competition under 15 U.S.C. § 1125(a). US Ghost also seeks injunctive relief barring Defendants from using several allegedly infringing marks, along with disgorged profits, damages, costs, and attorneys' fees. Each request is addressed in turn.

1. *Finding of Liability*

US Ghost requests a finding that Defendants infringed upon "the Lizzie Borden name and trademark" as well as the "hatchet image" trademark. Doc. No. 110 at 16. In addition, US Ghost asks the Court to find that this "infringement constitute[d] unfair competition in violation of 15 U.S.C. § 1125(a)." Id. Because "each of [the plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law" after the

entry of default, US Ghost's Motion for Default Judgment is ALLOWED as to its requested finding of liability.[3] Brockton Sav., 771 F.2d at 13.

2. *Injunctive Relief*

US Ghost also requests "[a] permanent injunction forbidding Defendants' continued utilization" of the allegedly infringing marks. Doc. No. 110 at 14. Specifically, US Ghost asks the Court to order Defendants to take "immediate corrective action to remove the Infringing Marks and any and all other infringing usage from within or outside of its brick-and-mortar storefront, and/or remove any and all infringing usage from its website, and to destroy any and all infringing labels and/or products bearing infringing labels." Doc. No. 110-1 at 2. To issue a permanent injunction, the Court must "find that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable harm in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." A.W. Chesterton Co., Inc. v. Chesterton, 128 F.3d 1, 5 (1st Cir. 1997).

Because US Ghost's claims are taken as "established . . . as a matter of law" after the entry of default, Brockton Sav., 771 F.2d at 13, it is true that US Ghost must also be considered to have prevailed on the merits of its trademark and related claims for purposes of its Motion for Default Judgment. See also Doc. No. 110 at 7 n.3 (stating that "[e]valuation of Plaintiff's infringement claim" also establishes required elements for unfair competition, false designation of origin, and its state law claims). But "[i]njunctive relief does not flow automatically from a finding of trademark infringement." Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito

[3] The Court reaches this conclusion reluctantly in light of its previous determination regarding US Ghost's likelihood of success. This finding of liability is nonetheless required under the law given the relevant circumstances.

Oriental, 832 F.3d 15, 37 (1st Cir. 2016). Here, the Court concludes that a permanent injunction is not appropriate despite the necessary finding of trademark infringement after the entry of default.

For one, US Ghost has not established that it would suffer irreparable harm in the absence of injunctive relief. US Ghost's complaint highlighted that Miss Lizzie's Coffee and the Lizzie Borden House were "located directly next door" to one another, Doc. No. 1 at 5, and repeatedly described the businesses' proximity as a source of consumer confusion, see id. at 7–8. But Miss Lizzie's Coffee is no longer located next door to the Lizzie Borden House. See Doc. No. 125 at 2; Doc. No. 127 at 2. Nor is there any suggestion that Miss Lizzie's Coffee will return to its prior location. This being the case, US Ghost has not demonstrated that Miss Lizzie's continued use of the allegedly infringing marks poses harm to US Ghost, let alone irreparable harm. Injunctions "are rarely warranted where no threat of future harm exists." Capability Grp., Inc. v. Am. Exp. Travel Related Servs. Co., Inc., 658 F.3d 75, 82 (1st Cir. 2011).

In addition, the Court concludes that a permanent injunction would adversely affect the public interest under the very unusual circumstances in this case. The Court previously determined on a preliminary basis that US Ghost had "failed to demonstrate a likelihood of success" with respect to its federal trademark infringement claim "for several reasons." Doc. No. 24 at 2. First, "Miss Lizzie's hatchet was not similar to [US Ghost's] mark." Id. Second, Miss Lizzie's was not using the "Lizzie Borden" mark for which US Ghost has a service mark, and there was no evidence that the mark had attained a "secondary meaning." Id. at 3. Third, the limited evidence of consumer confusion which US Ghost identified stemmed from the fact that "both businesses operate in close physical proximity; both trade off the Lizzie Borden story; and many customers generally associate services related to a historical site, such as gift shops

and cafes, with the nearby historical site itself." Id. at 4. But none of these factors suggested "consumer confusion arising from infringement of [US Ghost's] trademarks." Id. Fourth, US Ghost and "Miss Lizzie's are not direct competitors," because US Ghost "sells tours and a bed-and-breakfast experience" while "Miss Lizzie's operates a coffee shop." Id. at 4–5. Fifth, and "given the different services, the parties unsurprisingly use different trade channels." Id. at 5. Finally, the Court added that "Miss Lizzie's storefront displays distinct notices stating that it has no affiliation with the Lizzie Borden House" which "further distinguish the businesses." Id. at 7 (citation modified). The First Circuit affirmed the result—and its supporting reasoning—in its entirety. See generally Doc. No. 45.

Entry of default notwithstanding, US Ghost has not presented any arguments or evidence which would change the Court's determination today. If anything, the likelihood of consumer confusion is arguably lower now that Miss Lizzie's is no longer located directly next door to the Lizzie Borden House. See Doc. No. 125 at 2; Doc. No. 127 at 2. To the extent that US Ghost nonetheless contends in recent motions that consumer confusion "has only increased" in the three years since this Court's preliminary determination, Doc. No. 127 at 2–3, US Ghost still has not demonstrated that this is confusion "arising from infringement of [its] trademarks" as opposed to the fact that, for example, both parties trade off the Lizzie Borden story, Doc. No. 24 at 4. To permanently enjoin Miss Lizzie's Coffee Shop from using the allegedly infringing marks on the basis of legal claims that two courts concluded had little merit would be contrary to the public interest, even if the entry of default otherwise establishes Defendants' liability as a procedural matter. US Ghost's request for a permanent injunction forbidding Defendants' usage of the allegedly infringing marks is therefore DENIED.

3. *Disgorged Profits, Damages, and Costs*

Under 15 U.S.C. § 1117(a), "[w]hen a violation of any right of the registrant of a mark . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." As noted above, though entry of default may establish liability, it does not establish the amount of damages owed to the plaintiff for purposes of default judgment. See G. & C. Merriam Co., 639 F.2d at 34 n.7. Rather, the plaintiff still bears the burden of proving any damages. See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 339 n.3 (1st Cir. 2008). US Ghost has failed to do so here.

US Ghost first argues that it is entitled to $63,000 for Defendants' disgorged profits. Doc. No. 110 at 14. US Ghost arrives at this figure based upon a "very conservative estimate" of "$500 per week" in profits over approximately a two-and-a-half-year period. Doc. No. 110-2 at 4–5. But US Ghost does not present any evidence beyond mere speculation to support this total. Even if that were not the case, "a plaintiff seeking an accounting of defendant's profits must show that the products directly compete, such that defendant's profits would have gone to plaintiff if there was no violation." Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 5 (1st Cir. 1993). As previously discussed, US Ghost has not established that the Lizzie Borden House—a museum and bed-and-breakfast—competes with Miss Lizzie's Coffee in any meaningful sense. US Ghost's request for disgorged profits is therefore DENIED.

Next, US Ghost seeks $95,000 in damages. Doc. No. 110 at 15. A "plaintiff seeking damages" for a trademark violation "must prove actual harm." Aktiebolaget, 999 F.2d at 5. Conclusory statements that an allegedly infringing use had an effect on sales alone "[do] not present a colorable claim of actual damages." See id. at 6. Here, US Ghost argues that it "suffered a decline in business as a result of Defendants' infringement" totaling $95,000 over a

two-year period. Doc. No. 110-2 at 5. But US Ghost fails to demonstrate any connection between "the decline in total number of visitors and amount spent per-visitor" and any of Defendants' conduct, let alone their alleged trademark infringement in particular. See id. The mere fact that US Ghost earned less money in some years than others does not establish that Defendants were in any way responsible for that decline. US Ghost's request for damages is therefore DENIED.

Finally, US Ghost seeks $50,000 for their "out-of-pocket costs," including $35,000 in "estimated damages to Plaintiff's goodwill" "symbolized by the Marks" and $15,000 for "out-of-pocket expenses for lost employee and management time spent mitigating consumer confusion." Doc. No. 110-2 at 5–6. Because US Ghost has not provided any documentation, materials, or reasoning to support these estimates beyond a conclusory affidavit, the request for costs is DENIED.

4. *Attorneys' Fees*

Under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Whether a case is "exceptional" requires a "case-specific multi-factored analysis," which can include a range of considerations such as whether "the acts of infringement were malicious, fraudulent, deliberate, or willful." Tamko Roofing Prods. Inc., v. Ideal Roofing Co., 282 F.3d 23, 31–33 (1st Cir. 2002) (citation modified). The mere fact that a defendant acted willfully does not necessarily make a case exceptional. See id. at 32. Moreover, the fact that "the plaintiff suffered no actual damage" may "counsel[] against an award." Id. at 32–33.

Here, US Ghost seeks $31,207 in attorneys' fees under 15 U.S.C. § 1117(a) for "fees incurred from the date discovery was first propounded to Pereira, January 31, 2025, to December 31, 2025." Doc. No. 110 at 15–16. US Ghost asserts that it is entitled to these fees because of

Defendants' "willful infringement upon Plaintiff's Marks" and their "refusal to engage in the litigation process, as evidenced by their continued disregard for the discovery process, and this Court's orders." Id. at 15. While US Ghost must be considered a "prevailing party" after the entry of default, US Ghost has failed to establish that this is an "exceptional case[]" which merits attorneys' fees under 15 U.S.C. § 1117(a). To the extent there was any trademark infringement at all here, US Ghost has not shown that such infringement was "malicious" or "fraudulent." Tamko, 282 F.3d at 31 (citation modified). And even if the Court credits US Ghost's assertion that any infringement was "willful," Doc. No. 110 at 15, the Court concludes that "case-specific" factors nonetheless counsel against fees under 15 U.S.C. § 1117(a), Tamko, 282 F.3d at 33. For instance, and as discussed above, US Ghost has failed to establish that it suffered any actual damage because of Defendants' infringement. Moreover, the repeated, prior determinations that US Ghost's trademark claims were unlikely to succeed on the merits also counsel against an award of attorneys' fees in connection with those claims.

But even if attorneys' fees are not appropriate under 15 U.S.C. § 1117(a), the Court agrees that a limited assessment of attorneys' fees is justified for fees incurred because of Defendants' refusal to engage in the litigation process. Specifically, the Court has the "inherent power" to "assess attorneys' fees . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Roadway Exp., 447 U.S. at 766 (citation modified). For the reasons discussed above, the Court concludes that Defendants have "show[n] bad faith" by repeatedly "delaying or disrupting the litigation." Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991). Similarly, under Rule 37(b)(2)(C), the Court must order a party which disobeys a discovery order to pay "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses

unjust." For the reasons previously discussed, the Court also concludes that the assessment of attorneys' fees is warranted against Pereira given his repeated failure to obey discovery orders. The record before the Court does not suggest that Pereira's failure to obey discovery orders was substantially justified or that an award would inherently be unjust. Though Pereira contends that his shortcomings stemmed from his wife's health issues, Doc. No. 113, his failure "to produce discovery pre-dated his wife's illness," Doc. No. 117.

US Ghost has not requested—and would not be entitled to—the fees it incurred in this case from start to finish. Rather, it has appropriately limited its request to fees arising during the period when Defendants' failure to obey discovery orders or otherwise engage in the litigation process delayed and disrupted the case. Under the Court's inherent powers and Rule 37, the Court finds US Ghost is entitled to those fees. The Court therefore ALLOWS US Ghost's request for attorneys' fees in the amount of $31,207.

## IV. CONCLUSION

For the foregoing reasons, US Ghost's Motion for Default Judgment (Doc. No. 109) is ALLOWED in part and DENIED in part. A separate judgment will enter consistent with this Order. Each side shall bear its own fees and costs to the extent not already determined in this Order.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge